BRETT SCHUMAN (SBN 189247)
*bschuman@goodwinprocter.com*
JOSEPH R. FARRIS (SBN 263450)
*jfarris@goodwinprocter.com*
**GOODWIN PROCTER LLP**
Three Embarcadero Center, 24th Floor
San Francisco, California 94111
Tel.: 415.733.6000
Fax.: 415.677.9041

*Attorneys for Plaintiff*
MACHINE ZONE, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MACHINE ZONE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>EMBER ENTERTAINMENT, INC.,<br><br>Defendant. | Case No. 3:15-cv-01554-VC<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Date: July 23, 2015<br>Time: 10:00 a.m.<br>Courtroom: 4, 17th Floor<br>Judge: Hon. Vince Chhabria<br>Action Filed: April 3, 2015 |

The parties to the above-entitled action jointly submit this JOINT CASE MANAGEMENT CONFERENCE STATEMENT pursuant to the Standing Order for All Judges of the Northern District of California dated November 1, 2014, and Civil Local Rules, Rule 16-9.

## I. JURISDICTION & SERVICE

This Court has subject matter jurisdiction over the claims relating to the Copyright Act (17 U.S.C. §§ 101, 501) and the Lanham Act (15 U.S.C. §§ 1125 *et. seq.*) pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a). This Court has supplemental jurisdiction over the state law causes of action alleged in the Complaint under 28 U.S.C. § 1367.

The party currently named in the Complaint has been served and is subject to the personal jurisdiction of the Court.

## II. FACTS

PLAINTIFF:

More than ten months after plaintiff Machine Zone, Inc. ("Machine Zone") first published *Game of War: Fire Age* ("*Game of War*"), defendant Ember Entertainment, Inc. ("Ember") released its knockoff version, *Empire Z.* Players in the massive multiplayer online gaming community immediately recognized that *Empire Z* is "similar" and "[v]ery much like" *Game of War*. *Empire Z* has the same overall plot, theme (with minor alterations due to the modern-day time period featuring zombies), mood, setting, pace, characters, economy, and hierarchies of production as *Game of War*. By deliberately and intentionally copying the game play, layout and arrangement, visual presentation, overall appearance, and player interaction from *Game of War* without Machine Zone's authorization, Ember has infringed on Machine Zone's copyrights. Due to the extensive similarities, *Empire Z* is essentially a zombie version of *Game of War*. One review was even titled "*Empire Z* Review: The Zombie Themed '*Game of War: Fire Age*,'" suggesting that the games have similar origins. Machine Zone has applied to register various versions of *Game of War* with the United States Copyright Office.

In addition to infringing on Machine Zone's copyrights, Ember used *Game of War's* trade dress—its distinctive look and feel—to confuse consumers as to the source of *Empire Z. Game of War's* look and feel includes the graphical rendering of the landscape; the size, shape, and design

of the icons used within the game; the orientation of the icons on the game interface, and the square-shaped casino game comprised of smaller squares containing resource icons. *Empire Z* uses this same distinctive look and feel in an attempt to confuse consumers and profit from *Game of War's* immense popularity. Consumers have reasonably thought that *Empire Z* is from the same source (Machine Zone) as *Game of War*.

DEFENDANT:

The plaintiff in this case, Machine Zone, claims that a video game that Defendant Ember created called *Empire Z* infringes Machine Zone's copyright in a video game called *Game of War* ("*GoW*"). However, it is in fact Machine Zone that copied numerous elements that it claims *Empire Z* infringes from pre-existing games, apparently because it believed that such copying was a good business model.[1] *GoW's* resulting derivative nature and inferior game play was widely criticized.[2] In contrast, Ember's *Empire Z* has new and original elements that set it apart from

---

[1] As Machine Zone's Chief Executive Gabriel Leydon explained in a 2012 interview:

> "[Interviewer] Is copying and cloning a good model?
> "[Mr. Leydon] It's a good model if you have scale. . . . If you have cheap scale, it's a great model . . . . "[A]ll I need to do is find out what works and have cheaper scale than them, copy it, and scale it out . . . If you want to scale fast and you have the ability to do it cheaply, you just clone."

Dean Takahashi, "Gabriel Leydon foresees the "true" dominance" of mobile games coming (interview)," Venture Beat, April 1, 2012, http://venturebeat.com/2012/04/01/gabriel-leydon-foresees-the-true-dominance-of-mobile-games-coming-interview/.

[2] As reviewers have noted:

- "[*GoW* is] pretty much a clone of every other game with an empire/kingdom (which there is already too many of)." Review of August 13, 2013, https://www.apptweak.com/game-of-war-fire-age/iphone-ipad/canada/app-marketing-app-store-optimization-aso/reviews-ratings/worst/all-versions/667728512; see also, the quotes in n. 1 of Ember's motion to dismiss filed June 5, 2015, Dkt. No. 8.

- "It [Machine Zone] forgot something else that is kind of important: giving all those united people [who play *GoW*]: something new and exciting to do . . . the core gameplay revolves around waiting for your task timers to finish and then queuing up new ones." Nick Tylwalk, "Game of War-Fire Age Review," http://www.gamezebo.com/2013/08/02/game-war-fire-age-review/;

- "But is the [*GoW*] game any good? [F]or me personally, it's kind of a collection of the worst of the mobile F2P ["free to play"] games craze. The UI [user interface] is an absolute nightmare, and flashing icons on the screen constantly beg players to purchase gold packages for real life cash." Paul Tassi, "A $40M Ad Budget Buys 'Game of War: Fire Age Kate Upton,' " http://www.forbes.com/sites/insertcoin/2014/11/16/a-40m-ad-budget-buys-game-of-war-fire-age-kate-upton/;

other games in this genre. *Empire Z* has been praised by the player community for its high quality game play.[3]

Ember will prove that its *Empire Z* game does not infringe any valid copyright interest in *GoW* because, *inter alia*, all of the elements that Machine Zone claims *Empire Z* infringes: (i) are not original to Machine Zone; (ii) are unprotectable ideas, game rules, or functional elements; or (iii) are unprotectable common, stock, *scenes-à-faire* elements widely used in this video game genre.

To give a few examples taken from Machine Zone's complaint:

(A) Machine Zone claims that *Empire Z* infringes its alleged copyright in *GoW* because both games use "analogous" commodities. (Complaint ¶ 28). However, the commodities listed in *GoW* are not original to *GoW;* similar commodities are found in many pre-existing games, and the commodities listed are therefore unoriginal, *scenes-à-faire* elements not protectable by copyright law. See *Durham Indus., Inc. v. Tomy Corp.*, 630 F.32d 905, 908-09 (2d.Cir. 1980) (elements copied from pre-existing works not protectable by copyright law); *Data East USA v. Epyx, Inc.*, 861 F.2d 204, 208-09 (9th Cir. 1988) ("scenes-à-faire" elements in video game unprotectable);

---

● "[I]s 'Game of War' worth the hype? After trying it out for a couple of weeks, we have to answer a resounding no. This game is a disaster." Matt Johnston, "The ugly truth about the wildly popular 'Game of War' featuring Kate Upton," http://www.businessinsider.com/game-of-war-is-bad-2015-5

[3] "This is the best MMO game I've ever played go check it out. This game is like no other with its story and it timeline it's amazing." http://www.amazon.com/Ember-Entertainment-Empire-Z/product-reviews/B00KZ1I254/ref=dp_top_cm_cr_acr_txt?ie=UTF8&showViewpoints=1;

"This is a fun game to play. It has a story line, strategy, and good graphics. If your [sic] looking for a great game then here it is." Review of July 13, 2014, http://www.amazon.com/Ember-Entertainment-Empire-Z/product-reviews/B00KZ1I254/ref=dp_top_cm_cr_acr_txt?ie=UTF8&showViewpoints=1;

"This game is good quality and very in-depth. Huge online multiplayer possibilities. A+" Review of October 15, 2014, https://www.appannie.com/apps/google-play/app/com.ember.stainz/reviews/?date=2014-04-29~2015-05-13.

"Awesome Zombie game. Really challenging. Love it." Review of October 16, 2014, https://www.appannie.com/apps/google-play/app/com.ember.stainz/reviews/?date=2014-04-29~2015-05-13.

• "I'm a *CoC* [*Clash of Clans*] player and I recently downloaded this game and I love it and will definitely play more of it in the future thank you Ember Entertainment for making such a great game." Review of October 15, 2014, https://www.appannie.com/apps/google-play/app/com.ember.stainz/reviews/?date=2014-04-29~2015-05-13.

*Spry Fox LLC v. LOLApps Inc.*, 2012 WL 5290158, *5 (W.D.Wash. 2012) ("scenes-à-faire" elements unprotectable). The unoriginal nature of *GoW's* commodities listing is shown in Figure 1:

**Figure 1 –Similar Commodities in Pre-existing Games**[4]

| ***Kingdoms of Camelot ("KoC")*** | ***Hobbit*** | ***Dragons of Atlantis ("DoA")*** | ***Arcane Empires*** | ***GoW*** |
|---|---|---|---|---|
| Food | Food | Food | Food | Food |
| Lumber | Wood | Wood | Wood | Wood |
| Stone | Stone | Stone | Crystal | Stone |
| Ore | Ore | Metals | Ore | Ore |
| Gold | Coins | Gold | Silver | Silver |

(B) Machine Zone claims that *Empire Z* infringes its alleged copyright in *GoW* because both games share analogous "resource types and structures." (Complaint ¶ 29.) However, those elements are unprotectable because they also are not original to Machine Zone as shown in Figure 2:

**Figure 2 – Similar Resource Types and Structures in Pre-Existing Games**

| ***KoC*** | ***Hobbit*** | ***DoA*** | ***GoW*** |
|---|---|---|---|
| Food -> Farm | Food -> Farm | Food -> Farm | Food -> Farm |
| Wood -> Sawmill | Wood -> Lumbermill | Wood -> Lumbermill | Wood ->Logging Camp |
| Ore -> Mine | Ore -> Mine | Ore -> Mine | Ore -> Mine |
| Stone -> Quarry | Stone -> Quarry | Stone -> Quarry | Stone -> Quarry |
| Gold-> Cottage | Coins-> Housing | Gold-> Home | Silver -> Villa |

[4] Of the games mentioned in this section, *Evony* was released in May 2009, *Kingdoms of Camelot* ("*KoC*") was released in late 2009, *Dragons of Atlantis* ("*DoA*") was released in 2011, *King's Empire* was released in February 2012, *Throne on Fire HD* was released in May 2012, *Arcane Empires* was released in August 2012, and *Hobbit: Kingdoms of Middle Earth* ("*Hobbit*") was released in November 2012. Machine Zone claims that *GoW* was released on July 25, 2013.

(C) Machine Zone claims that *Empire Z* infringes its alleged copyright in *GoW* because both games allow users to purchase resources with virtual currency. (Complaint ¶ 30.) However, that ability is an unprotectable idea. See 17 U.S.C. §102(b) (copyright law does not protect ideas); *Spry Fox LLC v. LOLApps Inc.*, supra, 2012 WL 5290158 at *4 ("exchanging earned 'coin' for strategic advantages is an [unprotectable] idea inherent in the game"). Further, that idea is *scenes-à-faire*, present in many pre-existing games, as shown in Figure 3:

**Figure 3- Similar "Virtual Currency" Purchases in Pre-existing Games**

***KoC*** ***King's Empire*** ***GoW***




(D) Machine Zone claims that *Empire Z* infringes its alleged copyright in *GoW* because the "unique style" of *GoW* "is duplicated" in *Empire Z.* (Complaint ¶ 32). However, a work's "style" is not protectable by copyright law; others are free to create works of a similar "style" if nothing protectable is copied. See *Fogerty v. Fantasy Records, Inc.*, 94 F.3d 553, 556 (9th Cir. 1996) ("Fogerty's vindication of his copyright in 'The Old Man Down the Road'...paved the way for future original compositions-by Fogerty and others-*in the same distinctive "Swamp Rock" style and genre*")(emphasis added). Further, *GoW's* "style" is not "unique;" many prior games have similar "styles," as shown in Figure 4:

**Figure 4 –Similar “Styles” in Pre-existing Games**

***KoC***




***DoA***




***King’s Empire***




***GoW***



(E) Machine Zone claims that *Empire Z* infringes its alleged copyright in *GoW* because the "hierarchies of production" in *Empire Z* and *GoW* are "nearly identical." (Complaint ¶ 33). However, such hierarchies are not protectable because they are a function of common goals and rules, see *DaVinci Editrice S.r.l. v. Ziko Games, LLC*, 2014 WL 3900139, *8 (S.D.Tex. 2014) (game rules not protectable), and *Spry Fox LLC v. LOLApps Inc.*, supra, 2012 WL 5290158 at*6 (functional elements of video game not protectable). Further, *Empire Z*'s production hierarchy is not similar, let alone "virtually identical," to *GoW*'s, as shown in the partial listing of production hierarchies in Figure 5:

**Figure 5 – Comparing Production Hierarchies**

| ***KoC*** | ***GoW*** | ***Empire Z*** |
|---|---|---|
| Cottage 1 | Farm 1 | Farm 1 |
| Farm 2 | HQ2 | Command Center 2 |
| Cottage 1 | Logging Camp | Lumber Mill 1 |
| Cottage 1 | Academy | Oil Derrick 1 |
| Farm 1 | Research Scouting | Recruiting Station 1 |
| Farm 1 | Quarry | Join Alliance |
| Change Name | Mine | Research Lab 1 |
| Sawmill 1 | Villa | Research Recon |
| Sawmill 1 | Barracks | Mine 1 |
| Research Logging 1 | Train Troops | Housing 1 |
| Quarry 1 | Forge | Infected Pen 1 |
| Quarry 1 | Farm 2 | Farm 2 |
| Research Stoneworking 1 | Villa 2 | Lumber Mill 2 |
| Mine 1 | Logging Camp 2 | Oil Derrick 2 |
| Research Smelting 1 | Quarry 2 | Mine 2 |
| Barracks 1 | Mine 2 | Storage Bunker 2 |
| Raise Pop. to 500 | Villa 3 | Research Lab 2 |

(F) Machine Zone claims that *Empire Z* infringes its alleged copyright in *GoW* because the cities they depict permit construction of a defensive wall. (Complaint ¶ 34.) However, using such walls is a commonplace, unprotectable idea present in almost all pre-exiting games in this genre, as shown in Figure 6:

**Figure 6 – Similar "Defensive Walls" in Pre-existing Games**

***Evony***



***Spartan Wars***




***KoC***




***Hobbit***



(G) Machine Zone claims that *Empire Z* infringes its alleged copyright in *GoW* because "the structures in *Empire Z* are analogous to the structures of *Game of War*." (Complaint ¶ 34.). However, *GoW's* "structures" are not protectable because they are not original to *GoW;* many previous games have similar "structures," as shown in Figure 7:

**Figure 7- Similar "Building Structures" in Pre-existing Games**

| ***KoC*** | ***DoA*** | ***Hobbit*** | ***GoW*** |
|---|---|---|---|
| Castle | Fortress | Keep | Stronghold |
| Storehouse | Storage Vault | Vault | Storehouse |
| Barracks | Barracks | Garrison | Barracks |
| Alchemy Lab | Science Center | Academy | Academy |
| Apothecary | Healing Pool | | Hospital |
| Embassy | | Embassy | Embassy |
| WatchTower | Sentinel | WatchTower | WatchTower |
| Cottage | Home | Home | Villa |

(H) Machine Zone claims that *Empire Z* infringes its alleged copyright in *GoW* because each game has a "world view" screen with a grid system in which players can "teleport" to empty squares (Complaint ¶ 38). However, the idea of such a screen with "teleport" ability is not protectable. Further, such screens and "teleport" features are not original to *GoW*, many pre-existing games contain similar "world view" screens, and *Empire Z*'s "world view" screen is no more similar to *GoW*'s than *GoW*'s is similar to those in pre-existing games as shown in Figure 8 below:

## Figure 8- Similar "World View" Screens in Pre-existing Games

***KoC***




***DoA***




***King's Empire***




***GoW***



(I) Machine Zone claims that *Empire Z* infringes its alleged copyright in *GoW* because "the organization of the display screen in *Empire Z* is nearly identical to *Game of War's*." (Complaint ¶ 40.) However, that "organization" is not protectable because it is a function of the size and shape of mobile device screens. Virtually all display screens in games in this genre share a similar "organization," and *GoW*'s screen "organization" is not original to *GoW*, as shown in Figures 4 and 8 above, and in Figure 9 below:

**Figure 9 – Similar Screen Layouts In Pre-existing Games**

***DoA*** ***KoC*** ***GoW***




(J) Machine Zone claims that *Empire Z* infringes its alleged copyright in *GoW* because "each game features a casino" screen with a similar rectangular appearance. (Complaint ¶ 44.) However, the idea of a rectangular "casino" screen is unprotectable, that idea is not original to *GoW*, and similar rectangular "casino" screens have been present in games used at least as far back as 1984 on the television program "Press Your Luck." *Empire Z*'s rectangular "casino" screen is no more similar to *GoW's* than *GoW*'s rectangular casino screen is similar to those present in pre-existing works, as shown in Figure 10 below:

**Figure 10 – Pre-existing Rectangular "Casino" Boards**

**"Press Your Luck" TV Program "Casino" Screen**




***EVONY* Online "Casino" Screen**



***King's Empire* "Casino" Screen**




***Throne on Fire HD* "Casino" Screen**




***GoW* "Casino" Screen**




Ember could continue demonstrating that each of the other material allegations in Machine Zone's Complaint lack merit, but the foregoing examples illustrate Ember's position. Machine Zone has filed a meritless copyright infringement claim against a smaller competitor with a superior game that is succeeding without the benefit of a super model in a multimillion dollar

advertising campaign.[5] Machine Zone's copyright infringement claim lacks merit for these and other reasons. Judgment should be entered in favor of Ember on that claim.

Machine Zone also claims that Ember's distribution of *Empire Z* violates its trade dress rights and California unfair competition law. Ember has moved to dismiss those claims, which it believes lack merit for the reasons stated in that motion, among others.

## III. LEGAL ISSUES

PLAINTIFF:

Machine Zone has asserted claims against Ember for copyright infringement, violation of the Lanham Act, and unfair competition. All three claims are based on Ember's mobile game *Empire Z*, which is a blatant knock-off of Machine Zone's industry-leading mobile game, *Game of War*. The primary legal disputes arising from Machine Zone's Complaint are:

- Which original elements of *Game of War* are subject to copyright protection;
- Whether *Empire Z* copied the original elements of *Game of War*;
- Whether *Game of War's* trade dress is distinctive;
- Whether *Game of War's* trade dress is nonfunctional;
- Whether Ember uses *Game of War's* trade dress in a manner that it likely to cause confusion among consumers as to the source, sponsorship, affiliation, or approval of *Empire Z*;
- Whether Ember engaged in unfair competition by its use of *Game of War*'s trade dress;
- The amount of profits that Ember has realized because of its copyright infringement;
- The amount of profits that Ember has realized because of its violations of the Lanham Act and unfair competition;

[5] Paul Tassi, "A $40M Ad Budget Buys 'Game of War: Fire Age Kate Upton,' " http://www.forbes.com/sites/insertcoin/2014/11/16/a-40m-ad-budget-buys-game-of-war-fire-age-kate-upton/

- The cost of corrective advertising necessary to remedy the harm to *Game of War*'s brand;
- Machine Zone's lost profits related to *Game of War* because of Ember's copyright infringement; and
- Machine Zone's lost profits related to *Game of War* because of Ember's violation of the Lanham Act.

DEFENDANT:

- Whether Machine Zone owns valid copyright interests in the elements of *GoW* it claims Ember infringes in *Empire Z.*
- Whether Machine Zone copied from pre-existing video games the elements in *GoW* that it claims Ember's *Empire Z* infringes, such that those elements are not original to *GoW* and cannot support Machine Zone's copyright infringement claim.
- Whether Machine Zone claims copyright infringement of ideas that are not protected by copyright law.
- Whether Machine Zone claims copyright infringement of the game rules that are not protectable by copyright law.
- Whether Machine Zone claims copyright in functional elements that are not protected by copyright law.
- Whether Machine Zone claims copyright in common, stock, *scenes-à-faire* elements that are not protected by copyright law.
- Whether Ember independently created elements that Machine Zone claims infringe its copyright in *GoW*.
- Whether Machine Zone has any valid trade dress in any distinctive, nonfunctional elements of *GoW,* and if so, what that trade dress is.
- Whether Machine Zone's alleged trade dress is different from it alleged copyright in *GoW*.
- Whether *Empire Z* contains a combination of elements confusingly similar to Machine Zone's alleged trade dress in *GoW*, whatever that trade dress is.

- Whether Machine Zone's claim of trade dress infringement is barred by the First Amendment.
- Whether Machine Zone's state law unfair competition claim is preempted by the Copyright Act to the extent it is based on its copyright infringement claim.
- Whether Machine Zone's state law unfair competition claim fails for the same reasons its trade dress infringement claim fails.
- Whether Machine Zone is entitled to recover any damages or lost profits on any of its claims in this action.
- Whether Machine Zone is barred from recovering attorneys' fees on its copyright infringement claim because it did not register *GoW* for copyright with the Copyright Office until months after Ember began distributing *Empire Z.*
- Whether Ember can recover the attorneys' fees it incurs defending against Machine Zone's copyright infringement claim.
- Whether Machine Zone filed a demand for jury trial in, with or after it filed its complaint.

## IV. MOTIONS

Currently pending before the Court is Ember's motion to dismiss counts two and three in Machine Zone's Complaint. This motion is set to be heard on July 23, 2015 at the same time as the case management conference in this case. There are no other motions currently pending.

The parties anticipate filing motions for summary judgment or partial summary judgment.

## V. AMENDMENT OF PLEADINGS

PLAINTIFF:

Machine Zone anticipates amending the Complaint to add additional facts as they are developed in discovery. Machine Zone proposes that the last day to amend the pleadings be six months after resolution of Ember's motion to dismiss.

DEFENDANT:

Once Machine Zone's pleading is resolved, Ember anticipates filing an answer and counterclaims. Ember may wish to amend those pleadings as discovery develops. Ember proposes

that the last day to amend Machine Zone's complaint be three months after resolution of this Court's order on any motion to dismiss by Ember.

## VI. EVIDENCE PRESERVATION

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI") and have taken reasonable and proportionate steps to preserve relevant evidence. The parties are continuing to meet and confer regarding the ESI checklist.

## VII. DISCLOSURES

The parties served their initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) on June 11, 2015. The parties reserve their right to amend their disclosures as additional information becomes available in discovery.

## VIII. DISCOVERY

### A. Scope of Anticipated Discovery

Discovery will encompass the claims and defenses asserted in the lawsuit.

### B. Proposed Modifications of the Discovery Rules

The parties do not request any modifications to the discovery rules of the Federal Rules of Civil Procedure.

### C. E-Discovery Order

The parties are meeting and conferring regarding whether to enter into an e-discovery order and along what terms.

### D. Discovery Timing

PLAINTIFF:

Machine Zone served its First Set of Requests for Production of Documents and First Set of Special Interrogatories to Ember on June 2, 2015. Machine Zone proposes a discovery schedule as set forth in the proposed schedule in Section XVII.

DEFENDANT:

Ember served Defendant's Special Interrogatories to Plaintiff, Set 1 and Defendant's Request for Production of Documents to Plaintiff, Set 1, on July 11, 2014. Ember has noticed its Rule 30(b)(6) deposition of Machine Zone for August 7, 2015. The parties agreed to the

deposition date of August 7, 2015 for Ember's Rule 30(b)(6) deposition of Machine Zone. Ember proposes the discovery schedule set forth in Section XVII.

### E. Privilege or Protections and Confidentiality

The parties have met and conferred regarding the model protective order used in the Northern District of California and will submit a stipulated protective order for the Court's review in advance of the case management conference.

### F. Anticipated Disputes

The parties are not aware of any discovery disputes at this time.

### G. Agreement re Service by Email

For documents not served via the Court's ECF system, the parties agreed to email service in their Stipulation Regarding Service and Delivery of Documents, executed on June 2, 2015. Service by email will be considered equivalent to service by hand delivery.

## IX. CLASS ACTIONS

Not applicable.

## X. RELATED CASES

There are no cases related to this action.

## XI. RELIEF

PLAINTIFF:

Machine Zone is unable at this time, without the benefit of discovery, to make a full calculation of damages sustained as a result of the actions of Ember, but Machine Zone estimates that Ember has realized unjust enrichment in an amount totaling at least $100 million. Machine Zone has suffered monetary damages, which are subject to determination as this suit proceeds, including but not limited to lost profits, loss of goodwill, and the cost of corrective advertising. Machine Zone seeks the following damages for Ember's infringement of its copyrights:

(i) compensatory damages, including but not limited to compensation for lost profits as a result of Ember's conduct;

(ii) disgorgement and restitution based on Ember's unjust enrichment resulting from its conduct;

(iii) attorney fees, costs and disbursements, including costs of suit;

(iv) interest; and

(v) any further relief deemed proper by the Court.

Machine Zone seeks the following damages for Ember's infringement of its trade dress:

(i) compensatory damages, including but not limited to compensation for lost profits as a result of Ember's conduct, the costs of corrective advertising, and damages for the loss of goodwill;

(ii) disgorgement and restitution based on Ember's unjust enrichment resulting from its conduct;

(iii) attorney fees, costs and disbursements, including costs of suit;

(iv) interest; and

(v) any further relief deemed proper by the Court.

Some of Machine Zone's injury is irreparable and therefore subject to permanent injunctive relief. As such, Machine Zone seeks a preliminary and permanent injunction enjoining Ember and all persons acting in concert from infringing Machine Zone's copyright as provided by the Copyright Act, 17 U.S.C. § 502, and "look and feel" trade dress as provided by the Lanham Act, 115 U.S.C. § 1125(A).

DEFENDANT:

Ember contends that Machine Zone is entitled to no relief on any of its claims. Ember also contends that it is entitled to recover its attorneys' fees, costs, and disbursements in defending the action, as well as all damages and profits recoverable on any counterclaims it files herein.

## XII. SETTLEMENT AND ADR

The parties are amenable to private mediation after conducting reasonable discovery.

## XIII. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

Both parties have declined to proceed before a magistrate judge for all purposes.

## XIV. OTHER REFERENCES

The parties agree that this case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## XV. NARROWING OF ISSUES

The parties are not aware of any issue that might be narrowed or procedures that may be streamlined at this point.

## XVI. EXPEDITED TRIAL PROCEDURE

Given the facts that need to be developed in discovery and the likely need for expert discovery, the parties do not believe this case is appropriate for an expedited trial schedule.

## XVII. SCHEDULING

PLAINTIFFS:

| **Proposed Event** | **Plaintiff's Proposed Date** |
|---|---|
| Last day to amend pleadings | Six months after CMC |
| Fact Discovery Cutoff | Ten months after CMC |
| Expert Disclosures | Opening: One month after the close of fact discovery<br>Rebuttal: Two months after the close of fact discovery |
| Expert Discovery Cutoff | Three months after the close of fact discovery |
| Last day to file Dispositive Motions | One month after the expert discovery cutoff |
| Hearing on Dispositive Motions | Six months after the close of fact discovery |
| Pretrial Conference | Eight months after the close of fact discovery |
| Trial | Nine months after the close of fact discovery |

DEFENDANTS' PROPOSED SCHEDULE:

| **Proposed Event** | **Defendants' Proposed Dates** |
|---|---|
| Last day to amend pleadings | Three months after pleadings settled |
| Fact Discovery Cutoff | March 25, 2016 |
| Expert Disclosures | April 25, 2016 |
| Expert Discovery cut-off | June 24, 2016 |
| Hearing on Dispositive Motions | August 26, 2016 |

| Proposed Event | Defendants' Proposed Dates |
|---|---|
| Pretrial Conference | September 23, 2016 |
| Trial | October 2016 |

**XVIII. TRIAL**

PLAINTIFF:

Machine Zone demands a jury trial and anticipates that such trial will last 5-7 days.

DEFENDANT:

Machine Zone did not file a demand for jury trial with its complaint or after it filed its complaint herein. Defendant will make its election on the jury trial issue when it files its answer herein.

**XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

The parties have filed their disclosure statements herein.

**XX. PROFESSIONAL CONDUCT**

All attorneys of record representing the parties herein have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**XXI. SUCH OTHER MATTERS AS MAY FACILITATE THE JUST, SPEEDY AND INEXPENSIVE DISPOSITION OF THIS MATTER.**

None at this time.

Dated: July 16, 2015

By: /s/ Brett Schuman

Brett Schuman
Joseph R. Farris
**GOODWIN PROCTER LLP**
Three Embarcadero Center, 24th Floor
San Francisco, California 94111
Tel.: 415.733.6000
Fax.: 415.677.9041

*Attorneys for Plaintiff*
MACHINE ZONE, INC.

By: /s/ Mark S. Lee

Chad S. Hummel
Mark S. Lee
Seth Reagan
MANATT, PHELPS & PHILLIPS, LLP
11355 West Olympic Boulevard
Los Angeles, California 90064-1614
Tel.: 310.312.4000
Fax.: 310.312.4224

*Attorneys for Defendant*
EMBER ENTERTAINMENT, INC.

**ATTESTATION PURSUANT TO LOCAL RULE 5-1.I.3 AND GENERAL ORDER 45**

I, Brett Schuman, am the ECF User whose ID and Password are being used to file this Joint Case Management Statement.

In compliance with General Order 45, X.B. and Local Rule 5-1.i.3, I hereby attest that Mark S. Lee, counsel for Defendant Ember Entertainment, Inc., has concurred to its filing.

Respectfully submitted,

Dated: July 16, 2015

/s/ Brett Schuman
Brett Schuman

**CERTIFICATE OF SERVICE**

I, Brett Schuman, hereby certify that a copy of the foregoing document and attachments, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class mail postage prepaid on all counsel who are not served through the CM/ECF system on July 16, 2015.

/s/ Brett Schuman
Brett Schuman